## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY JONES, | : | Civil No. 3:19-cv-00004 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DR. PAUL NOEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

### MEMORANDUM

Before the court are Defendants' motions for summary judgment.  Plaintiff

brings Eighth Amendment claims under 42 U.S.C. § 1983 based on the treatment

he received for Hepatitis C.  He challenges both the Department of Corrections'

("DOC") policies regarding treating inmates for Hepatitis C and the treatment he

received directly from his medical care provider at the State Correctional

Institution at Frackville ("SCI-Frackville").  For the reasons explained below, the

court will grant judgment for Defendants and close the case.

### PROCEDURAL BACKGROUND

Plaintiff, a self-represented inmate currently housed at SCI-Frackville,

initiated this action in January of 2019.  (Doc. 1.)  In his complaint, he raises an

Eighth Amendment claim against Defendants Paul Noel, M.D., who is the Chief of

Clinical Services at the Pennsylvania Department of Corrections, and Haresh

Pandya, M.D., the medical director at SCI-Frackville, alleging denial of treatment for his Hepatitis C. (Doc. 1.)

Defendants separately filed motions for summary judgment. (Docs. 24, 28.) Plaintiff responded to each motion, Docs. 50, 53, and Defendants replied, Docs. 55, 56. The motions are now ripe to be addressed by this court.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Venue is appropriate because all actions detailed in the amended complaint occurred within the Middle District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

## STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v.*

2

*Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or

suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent.*

*Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  "Where

the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

**A. Facts Material to Plaintiff's Claims[1]**

   **1.  Hepatitis C Protocol**

By way of background, Hepatitis C is a viral infection that causes

inflammation of the liver. *See Bush v. Doe (I)*, 858 F. App'x 520, 521 (3d Cir. June

8, 2021) (nonprecedential) (citing *Hepatitis C Fact Sheet*, WHO (July 27, 2020),

---

[1] In accordance with the court's Local Rules, Defendants have filed their respective statements of material facts.  (Docs. 26, 29.)  Plaintiff included a counter statement of alleged facts.  (Doc. 54.) From those statements, and the evidence submitted by the parties, the court has culled the material facts in this matter and has set forth those facts in this section.

https://www.who.int/news-room/factsheets/detail/hepatitis-c)).  In 2011, the Food

and Drug Administration approved new direct-acting antiviral drugs ("DAADs")

for treatment of Hepatitis C.  *Bush*, 858 F. App'x at 521.  Treatment success for

Hepatitis C is defined as sustained virological response, which means the Hepatitis

C virus ("HCV") is not detected in the blood for twelve or more weeks after

treatment.  *Id*. at 521, n.2.  DAADs have a 90 to 95 percent success rate of

producing a sustained virological response.  *Id*. at 521 (citations omitted).  As a

result, in 2015, both the American Association for the Study of Liver Disease

("AASLD") and the Infectious Diseases Society of America began to recommend

that all patients with chronic Hepatitis C receive DAAD treatment, "except those

with limited life expectancy because of nonhepatic conditions."  *Id*. (citations

omitted).  DAADs are an effective but costly treatment method.  *See id*. (noting

that DAADs "cost[ ] up to $100,000 per treatment").

On November 13, 2015, the Department of Corrections issued its Interim

Hepatitis C Protocol.  (Doc. 26 ¶ 6.)  The DOC issued updated Hepatitis C

Protocols on November 7, 2016, and May 9, 2018.  (*Id*. ¶ 9.)  The Protocols

provide that all inmates with HCV will be entered into a chronic care clinic and

periodically monitored, examined, and tested.  (*Id*. ¶¶ 7, 10.)  The Protocols

prioritize inmates for treatment with DAADs.  (*Id*. ¶ 8.)

Defendant Noel was the Chief of Clinical Services for the DOC from
January 2014 to March 6, 2020.  (*Id.* ¶ 12.)  Defendant Noel developed the DOC's
Interim Hepatitis C Protocol and its three subsequent updated Hepatitis C Protocols
that establish the base guideline for uniform medical treatment of all DOC inmates
with HCV.  (*Id.* ¶ 14.)  The DOC's Interim Hepatitis C Protocol and the
subsequent Hepatitis C Protocols are all modeled after the policy established by the
Federal Bureau of Prisons.  (*Id.* ¶ 15.)  They are prioritization protocols that
address the medical needs of inmates based upon the stage of disease progression.
(*Id.*)

Defendant Noel asserts that prioritization protocols are necessary because
HCV is a slowly progressing disease that may take 20-40 years to develop into
cirrhosis of the liver.  (*Id.* ¶ 18.)  Moreover, as noted above, not all individuals with
HCV will develop liver cirrhosis.  (*Id.*)  According to the DOC, it is not medically
necessary to treat *all* inmates who have HCV with DAADs.  (*Id.* ¶ 19.)
Prioritization of such treatment for inmates with HCV depends on various factors
including, but not limited to, a finding of liver damage shown through METAVIR
scores.  (*Id.* ¶¶ 20–22.)

Chronic liver disease from HCV is measured by the degree of fibrosis.  (*Id.* ¶
20.)  The METAVIR scoring system categorizes the stages of liver fibrosis into
five levels: F0 (no fibrosis); F1 (mild fibrosis); F2 (moderate fibrosis); F3

(advanced fibrosis); and F4 (cirrhosis).  (*Id.* ¶ 21.)  Per the Hepatitis C Protocols,

the DOC monitors all inmates with chronic HCV through the chronic care clinic.

(Doc. 26 ¶ 22.)  Monitoring includes periodic examination, testing, and review of

blood test results.  (*Id.*)  From mid-2015 through April 2019, Defendant Noel

reviewed referrals and determined whether inmates, with certain exceptions, were

to be treated with DAADs.  (*Id.* ¶ 23.)

### 2.  Plaintiff's Medical Treatment

Plaintiff contracted liver disease in the 1990s.  (Doc. 29 ¶ 105.)  Plaintiff

was treated from 2000 to 2010 with the anti-viral drugs Interferon and Ribavinin,

which were ineffective.  (Doc. 51, p. 30.)[2]  Plaintiff asserts that upon learning of

the development of DAADs, he requested them as treatment, but was told the

request was denied due to the cost.  (*Id.*)

In June of 2014, Dr. Harwood assessed Plaintiff for a seizure and began

treating him with anti-seizure medications.  (Doc. 29 ¶ 4.)

Defendant Noel states that starting in 2015, Plaintiff received medical care

for his HCV through the chronic care clinic, which included monitoring, periodic

examination, testing, and review of blood test results. (Doc. 26 ¶ 24.)  However,

Defendant Pandya states that he initially started treatment with the Hepatitis clinic

in April of 2013.  (Doc. 29 ¶ 2.)  In November of 2016, Plaintiff had an APRI

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

score of 0.173 which translated to a METAVIR score of F0 to F1.  (Doc. 26 ¶ 25.)

In October 2017, he had an increased APRI score of 0.408, but this still translated

to a METAVIR score of F0 to F1.  (*Id*. ¶ 26.)  Plaintiff underwent liver ultrasounds

on January 5, 2017 and July 6, 2017, which showed a progression from mildly

enlarged heterogeneous echogenic liver to moderately enlarged heterogeneous

echogenic liver. (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.)  On November 7, 2017,

Plaintiff was referred for review of treatment with DAADS.  (Doc. 26 ¶ 28.)  On

November 29, 2017, Defendant Noel referred Plaintiff for a fibrose test.  (*Id*. ¶ 29.)

The test was performed in December of 2017 and indicated he had a fibrosis level

of F4, cirrhosis.  (*Id*. ¶ 30.)

In April of 2018, Plaintiff had a consult and was approved for treatment with

DAADs as soon as he changed his seizure medications.  (*Id*. ¶¶ 32–33.)  Plaintiff

was treated with Zepatier from February 4, 2019 through April 28, 2019.  (*Id*. ¶

35.)  On June 6, 2019, following treatment, an ultrasound showed a mildly

heterogenous liver, Doc. 27-9, p. 5, which Defendant Noel's counsel characterizes

as an improvement, Doc. 26 ¶ 37.  By December of 2019, Plaintiff's APRI score

was 0.174.  (Doc. 28-2, pp. 539.)

Defendant Noel alleges that "[p]atients that progress to cirrhosis and achieve

sustained virological response (SVR) from treatment with DAADs level their

survival curve to that of the general population."  (Doc. 26 ¶ 38.)

## B. Defendants Will be Granted Judgment on Plaintiff's Eighth Amendment Claims.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### 1. Defendant Noel Will be Granted Judgment.

There is no dispute that Plaintiff's Hepatitis C qualifies as a serious medical condition for purposes of the Eighth Amendment analysis.  *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019) (nonprecedential) (recognizing Hepatitis C constitutes a serious medical need).  However, Plaintiff has not advanced sufficient

evidence to permit a trier of fact to determine that Defendant Noel acted with deliberate indifference to his serious medical needs.

The record reflects that the DOC Hepatitis C Protocols requires a progression in severity that is required before treatment for Hepatitis C is provided, and, pursuant to the prioritization protocol, no inmate is absolutely precluded from receiving Hepatitis C treatment.  There is no genuine dispute that Defendant Noel followed the DOC's Hepatitis C Protocols in treating Plaintiff's Hepatitis C.

Plaintiff asserts that the DOC protocols create a system of exclusion rather than a system of prioritization by pointing out that if a prisoner's disease fails to progress to a more severe stage, he simply won't be treated.  (Doc. 50, p. 8.)  He asserts that this is inconsistent with the AASLD recommendation that all HCV patients receive DAADs regardless of the stage of progression.  *Id. citing Bush v. Doe (I)*, 858 F. App'x at 521.

However, Plaintiff has provided evidence that from the 2016 Protocol to the 2018 Protocol, the priority levels changed as more prisoners were treated.  (Doc. 56, p. 4.)  By 2018, the priority level two had gone from requiring an APRI of greater than or equal to 2.0 down to an APRI of greater than 0.7.  (Doc. 27-2, p. 9; Doc. 27-3, p. 9.)  Likewise, in the 2016 Protocol plan of treatment, if a patient had a APRI score greater than 1.5, the Infection Control Nurse had to be notified.  (Doc. 27-2, p. 7.)  By the 2018 Protocol, this was dropped to an APRI score greater

10

than 1.0 to trigger contact with the Infection Control Nurse.  (Doc. 27-3, p. 7.)  The

lowering of the severity level required to move up in prioritization shows that the

DOC's Protocol is not stagnant. In reality, the DOC Protocol does not result in

total exclusion, as argued by Plaintiff, but actually trends in the direction of

inclusion with time as more advanced cases of HCV are treated.  Therefore,

judgment will be entered for Defendant Noel since Plaintiff has not established that

Defendant Noel at any time was deliberately indifferent to his medical needs.

### 2.  Defendant Pandya Will be Granted Judgment.

Plaintiff also alleges that Defendant Pandya failed to provide medical care

for his Hepatitis C.  As discussed above, there is no dispute that Plaintiff's

Hepatitis C qualifies as a serious medical condition for purposes of the Eighth

Amendment analysis.  However, Plaintiff has not advanced sufficient evidence to

permit a trier of fact to determine that Defendant Pandya acted with deliberate

indifference to his serious medical needs.

The record is replete with evidence that Plaintiff received regular medical

care for this condition, consistent with the DOC's treatment protocols.  The

uncontroverted record evidence establishes that Plaintiff was being monitored and

treated in accordance with these protocols, and the HCV was ultimately resolved

and the liver size reduced.  Specifically, the record before the court shows that in

November of 2016, Plaintiff's APRI score was 0.193.  (Doc. 28-2, p. 423.)  By

April of 2017, his APRI was 0.224.  (*Id*., p. 833.)  Plaintiff underwent liver

ultrasounds on January 5, 2017 and July 6, 2017, which showed a progression from

mildly enlarged heterogeneous echogenic liver to moderately enlarged

heterogeneous echogenic liver. (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.)  In November of

2017, his APRI score had increased to 0.408.  (*Id*., pp. 482, 831.)  In December of

2018, his APRI score was 0.31.  (*Id*., p. 73.)  He was treated with a DAAD,

Zepatier, from February 4, 2019 through April 28, 2019.  (*Id*. ¶ 35.)  On June 6,

2019, an ultrasound showed a mildly heterogenous liver.  (Doc. 27-9, p. 5.)  By

December of 2019, Plaintiff's APRI score was 0.174.  (Doc. 28-2, pp. 539.)

The court notes that it was not the APRI score that triggered Plaintiff's

progression up the priority list for DAADs, but the enlarged liver in his two

ultrasounds in 2017.  (Doc. 26 ¶ 27; Doc. 27-9 pp. 2–3.)  On November 7, 2017,

Plaintiff was referred for review of treatment with DAADS.  (Doc. 26 ¶ 28.)  On

November 29, 2017, Defendant Noel referred Plaintiff for a fibrose test.  (*Id*. ¶ 29.)

The test was performed in December of 2017 and indicated he had a fibrosis level

of F4, cirrhosis.  (*Id*. ¶ 30.)  In April of 2018, Plaintiff had a consult and was

approved for treatment with DAADs as soon as he changed his seizure

medications.  (*Id*. ¶¶ 32–33.)  He was treated with Zepatier from February 4, 2019

through April 28, 2019.  (*Id*. ¶ 35.)  On June 6, 2019, an ultrasound showed the

liver had reduced in size.  (Doc. 27-9, p. 5.)

Plaintiff's primary complaint is that his treatment should have begun earlier, based on a declaration from the AASLD that treatment with DAADS is recommended for all patients with chronic Hepatitis C irrespective of disease stage.  (Doc. 50, p. 8.)  This argument implies that Plaintiff's claim is, in substance, a disagreement with a particular course of treatment. Critically, though, mere disagreement with the selected course of treatment is not grounds for a medical deliberate indifference claim.  *See Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (nonprecedential) (citing *Monmouth Cnty. Corr. Institutional*, 834 F.2d at 346).

Furthermore, Defendant Pandya has provided evidence that Plaintiff added to the time it took to receive DAADs by refusing to change his seizure medication when he was initially approved for treatment.  The DAADs were incompatible with his seizure medications.  The record shows that to remedy this issue, in May of 2018, Plaintiff had "most recently been offered Keppra by the Medical director of at this facility and has refused pending opine of a Neurologist."  (Doc. 28-2, p. 464.)  Keppra was prescribed by the Neurologist in June of 2018.  (*Id.*, p. 128.)  In July of 2018, Plaintiff refused to take his Keppra.  (*Id.*, pp. 106, 108.)  Plaintiff had to taper off his previous seizure medications while increasing his Keppra, which took time.  Therefore, the delay in not starting the Zepatier until February of 2019

was not directly the result of the DOC's Protocol's but was caused by Plaintiff's delay in the reduction of his previous seizure medications and transition to Keppra.

Plaintiff further asserts that the delay in treatment caused him to suffer from eczema, which he demonstrated with photos dated August of 2021. (Docs. 50, 51.) In the medical records provided by Defendants, when Plaintiff presented with skin complaints, he was provided treatment. (Doc. 28-2, pp. 43–44, 157–58, 475, 504, 820–21.)  The photos from August of 2021, are well past Plaintiff's the time period when Plaintiff receive treatment with DAADs.  He has provided no evidence that this eczema depicted in the August 2021 photos is the result of the lack of DAAD treatment received back in 2016 or 2017.  Additionally, these photos are not medical evidence.  *See Altenbach v. Ianuzzi*, 646 F. App'x 147, 152 (3d Cir. 2016) (nonprecedential) (requiring inmate to submit " 'verif[ied] medical evidence . . . to establish the detrimental effect of [the] delay' [in medical treatment] as he must do to support a delayed treatment claim").  Therefore, judgment will be entered in favor of Defendant Pandya because Plaintiff has not established that Defendant Pandya at any time was deliberately indifferent to his medical needs.

## CONCLUSION

Given the well-documented course of treatment set forth in the record, Plaintiff has failed to show that issues of material fact exist as to whether Defendants were deliberately indifferent to his serious medical needs.  As a factual

matter, it is undisputed that Plaintiff was carefully monitored by prison medical

staff in accordance with the DOC's Hepatitis C Protocols. The Third Circuit has

upheld the constitutionality of medical choices relating to the care and treatment of

Hepatitis C and has rejected inmate Eighth Amendment challenges to this type of

medical care. See, e.g., *Moore*, 767 F. App'x 335 (affirming summary judgment on

inmate's Eighth Amendment claim relating to treatment of Hepatitis C and finding

doctor appropriately monitored and treated inmate in accordance with policy).

Because Plaintiff failed to establish an Eighth Amendment violation, judgement

will be entered in favor of Defendants and their motions for summary judgment,

Docs. 24, 28, will be granted. The Clerk of the Court will be directed to close this

case.

      An appropriate order will follow.

                                s/Jennifer P. Wilson
                                JENNIFER P. WILSON
                                United States District Court Judge
                                Middle District of Pennsylvania

      Dated: September 30, 2022